## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

**Chelsea L. Davis,**
   *Plaintiff*

v.

                                             **Civ. Action No.** _____

**McKool Smith A PROFESSIONAL CORPORATION,** and
**BOC,** *Defendants*

---

## COMPLAINT

TO THIS HONORABLE COURT:

Plaintiff/Defendant Chelsea L. Davis ("Plaintiff") hereby limits the admissibility of statements made pro-se in pleadings and other papers filed with this Honorable Court and in discovery requests and files this Complaint for claims/counterclaims for cause against Defendants McKool Smith A PROFESSIONAL CORPORATION (hereinafter "MS" or "McKool Smith P.C." or "Defendant") and BOC (collectively, "Defendants").

Plaintiff/Defendant Chelsea L. Davis resides in Collin County, Texas at 2068 Meadow View Rd., Princeton, Texas 75407.

Defendant McKool Smith A PROFESSIONAL CORPORATION is a Texas corporation with a principal place of business at 300 Crescent Court, Ste. 1500, Dallas, TX 75205. Gary Eden is the registered agent at the same address.

Defendant "BOC" is an unknown entity having an unknown location, referred to in the certificate of formation of McKool Smith A PROFESSIONAL CORPORATION.

Defendants include state and federal and government employees and actors.

## II. JURISDICTION AND VENUE

**COMPLAINT**                                                                 1

This Court has subject matter jurisdiction due to federal question jurisdiction over this dispute pursuant to 28 U.S.C. §1331, because Plaintiff asserts claims arising under federal statutes. Wage discrimination, for example, under the Equal Pay Act is a federal question that gives rise to a civil cause of action that may be brought in this Court. The matter in controversy falls within the Court's general jurisdiction, and the amount in controversy exceeds the Court's minimum jurisdictional requirements.

This Court has personal jurisdiction over Defendants because each of them has committed acts within the state of Texas and within this judicial district giving rise to this action and each of Defendants has established minimum contacts with the forum such that the exercise of jurisdiction over each of Defendants would not offend traditional notions of fair play and substantial justice.

Further, this Court has subject matter jurisdiction based on diversity and the amount in controversy. There is diversity between Chelsea Davis, who resides in Collin County, Texas, McKool Smith A PROFESSIONAL CORPORATION, and "BOC," the parent company of McKool Smith A PROFESSIONAL CORPORATION, which is an unknown foreign entity. The amount in controversy for each cause of action complained of exceeds $75,000.

Venue is proper because Chelsea Davis worked for McKool Smith P.C. in Dallas, Texas as a salaried employee, and afterward for Defendants as an employee, and each of Defendants has committed acts within this judicial district giving rise to this action and does business in this district.

### III. FACTS

On information and belief, Samuel Baxter, a shareholder of MS, sexually harassed

Chelsea Davis and paid her less than males during her employment with McKool Smith P.C./BOC and on a continuing basis. Baxter lied to Chelsea when he told her that he would mentor her as her boss and help her to develop her career. Over the years, Baxter conspired with others to have Chelsea raped and sexually abused as part of a plan to protect the sexual harassers at MS and preserve a practice of sex discrimination at MS.

Chelsea was forced to sexually gratify Defendants' shareholders, agents and financiers as a condition of her employment and in the face of deadly threats if she were to quit or break her silence. Defendants devised retaliatory strategies by which to terminate, defame, and blacklist Chelsea, to entrap her in a solo practice for Defendants' agents Baxter and others referred to her in an office that was paid for, only to take everything away from her in January 2013, to destroy her legal practice and ruin her reputation. During her employment, Baxter would come into Chelsea's office, shut the door behind him and force her to show him her breasts. Defendants conditioned Chelsea's employment on her sexual conduct and participation in demeaning telephone conversations with shareholders, agents and financiers to entertain and sexually gratify Baxter and others. Baxter made repeated sexual advances toward her despite her repeated rebuffs. Chelsea was subjected to a hostile work environment in which the male executives treated the female employees as playthings who are expected to make themselves available for sexual favors. Chelsea was required to entertain and sexually gratify shareholders, agents and financiers at her office and at their offices in Texas and California. Baxter would call Chelsea during and after hours when he was in Dallas and have her come to Defendants' corporate apartment and offices to discuss the extra conditions of her employment. There, Baxter, for example, would take off his clothes and masterbate in front of her. Eventually,

**COMPLAINT**                                                                                                    3

Baxter tied Chelsea to his bed, assaulted her and even took advantage of her sexually. Baxter and Defendants continued the abusive behavior toward Chelsea and deadly threats if she did not do as she was told after she was wrongfully terminated but still laboring for the firm's employees, clients, agents and financiers, yet denied wages.

Chelsea's solo practice was merely an extension of her employment with Defendants. She created the entity at their direction under their supervision. They provided her with desks, chairs, file cabinets, notebooks, printers, computers, tab dividers and other supplies. The shareholders, employees and agents sent her shell documents to perform various tasks for her clients. She received statements from Defendants' accountant regularly. She worked with the same local counsel as Defendants. She continued various client matters that she started working on while she was an employee. She worked for Defendants' clients and other clients they specifically created to defraud her to make her think her practice was growing successfully. For example, one of her patent clients told her in 2012 that companies hired her as the "fixer" to avoid liability for sexual harassment. Chelsea did not realize at the time that Defendants would attempt or exert effort to defraud the patent office to avoid liability to her for sexual harassment.

At the same time, Chelsea was required to continue to entertain Defendants managers, agents, clients and investors and continue to cater to their every sexual need and desire. The sexual abuse became even more severe in the "office" that they provided to Chelsea, which was a residential home. Defendants maintain several home offices, residences, corporate apartments, etc. for their shareholders, managers, employees and agents to have sex during the day. At more than one of these "offices," Chelsea was assaulted, raped, sexually abused,

choked, strangled and tied down with handcuffs. She was forced to forego hobbies and activities outside of her office and directed to eat at certain restaurants so that she could be available at their beckon call to have sex on a moment's notice or without any notice at all. She was even held captive, not permitted to leave and put on a collar and leash. She was forced to drink urine and eat feces as part of an anal sex routine. However, the abusive anal sex caused her to suffer colon damage for which she no longer has health insurance because the injury happened while she was receiving health insurance benefits at MS and was a preexisting condition to the insurance she subsequently acquired.

Chelsea attended a conference in California in the Spring of 2012 where she met Roderick Dorman, a male shareholder of McKool Smith Hennigan P.C. Dorman introduced Chelsea to several males as an employee of McKool Smith P.C. from Dallas. Dorman knew that Samuel Baxter, Chelsea's former boss at the firm, was sending Chelsea business as a part of a plan to prevent her from suing the firm for wrongful termination and sexual harassment, continuing her employment. Dorman and the males demeaned her, humiliated her, and poked fun at the size and shape of her breasts. One of them told her he wanted to touch her perky breasts and feel her hard nipples. Another made fun of her age. Another made anti-semitic comments to her for having Jewish ancestry. Chelsea complained to Samuel Baxter, and he told her to be a good girl.

Chelsea did as she was told out of fear because she was threatened with deadly consequences. Baxter threatened to have her raped, actually raped her, threatened to have her raped by a judge who was HIV positive, and threatened that she would be killed if she ever broke her silence. In 2011, the day before they sent her to California with a chaperone and all

expenses paid for a business conference, they had Chelsea drugged and raped at her apartment. They spared no expense in keeping Chelsea under surveillance and forced her to check in daily Monday through Friday by phone. If she didn't leave a voicemail over the weekend, she was reprimanded on Monday morning. Baxter and others told her that she would be free in January 2013 when a gold mercedes parked in Leslie Ware's driveway. Sure enough, the gold mercedes arrived in January 2013, but not until after Chelsea was violently raped by a judge.

Dallas County Judge Carlos R. Cortez ("Cortez") violently raped Chelsea at her home on the night of December 4, 2012 (into the morning of December 5, 2012). Samuel Baxter had invited Chelsea to the MS Holiday Party in December 2012 and arranged for Carlos Cortez to pick up her ticket and leave it for her at his concierge desk the next day just to spite her. At the party, shareholders of MS, including Ted Stevenson, Samuel Baxter, Mike McKool and David Sochia verbally abused Chelsea and lied to her. They knew that Chelsea was a victim of sexual harassment, a hostile work environment and continued sexual abuse. They knew Baxter threatened to have Chelsea raped by a judge who was HIV positive, and they knew Cortez had raped her. Still, at the party, the shareholders mocked her, humiliated her and demeaned her. They knew of a plan to assault Chelsea again and destroy her practice and failed to warn her. The shareholders intentionally, knowingly, recklessly and maliciously participated in a conspiracy to accomplish the assaults and sexual assaults of Chelsea Davis and to ruin her career and reputation.

The shareholders, agents, employees, customers and financiers of Defendants continue to practice sexual harassment of female employees to preserve their habits of entertaining themselves and their clients with women stripping down in their offices, serving scotch and

cocktails, inappropriate touching, in-office and in-house pornography through improper visual recording and sexual jokes. On one occasion, Sam Baxter and Ted Stevenson's assistants ganged up on Chelsea in the women's bathroom with their conversation about lesbians on the television show "The Bachelor" only to complain that Chelsea was sexually harassing them even though they were the ones conversing about beautiful lesbians on the show, not Chelsea.

Baxter used his position to solicit sexual favors from Chelsea in the days prior to her employment evaluation by Leslie Ware. And once she notified Baxter that she would no longer allow him to use his employment position as leverage to demand sex, Defendants —acting through Ware as its agent—fired her. Chelsea was segregated, classified, and discriminated against because she was a female from whom Baxter and Ware wanted to continue to receive sexual favors and Defendants wanted to continue to receive benefits from financiers. Defendants were aware of a prior relationship, was aware of the exercised supervisory control over Chelsea, and was aware that the relationship had soured such that any sexual advances would be unwelcome. Defendants, however, took no steps to protect Chelsea from foreseeable sexual harassment and discrimination. Defendants willfully discriminated against Chelsea by paying her less than males.

Chelsea was terminated in part due to her age, sex and disabilities. She was told that no one cares about a thirty-one year old woman. Chelsea's age, sex and disabilities were determining factors in the decision to terminate her employment. Defendants did not articulate any reason in writing for terminating her employment. In fact, she was promised that everything would be better in January 2013. She would not have been terminated but for her age, but for her sex and but for her disability. Defendants' willful and malicious conduct, which

**COMPLAINT**                                                                                           7

was in reckless disregard for Chelsea's rights and caused and will continue to cause Chelsea damages, for which she is entitled to recover her lost wages, liquidated damages, reasonable costs and attorneys fees.

There exists a contract in which Chelsea is considered a full-time employee of Defendants in Dallas, Texas sufficient to support a claim under Section 1981 and Title VII against Defendants. Chelsea Davis reserves her right to use any contractual arguments as both a shield and a sword for any purpose.

There exists a promise or a set of promises for the breach of which the law provides a remedy, or the performance of which the law in some way recognizes a duty. Chelsea Davis reserves her right to use any contractual arguments as both a shield and a sword for any purpose.

There is equitable tolling of any statute of limitations with respect to Plaintiff's claims below to the extent any tolling is necessary. However, because there is evidence of false imprisonment, Chelsea's causes of action are not complete and do not accrue until the imprisonment ends.

Plaintiff has a Jewish heritage, a Native American heritage, is a thirty-one year old female with a disability and is protected by 42 U.S.C. §1981 and Title VII. Plaintiff: (1) is a qualified individual with a physical impairment (e.g., insomnia and post-traumatic stress disorder from traumatic sexual abuse) that limits her in one or more major life activities including but not limited to her ability to think, concentrate, work and sleep, among other things; (2) has a history and record of having a disability; and (3) has been regarded as having a disability. Consequently, she is disabled within the meaning of the Americans with Disabilities

Act. Plaintiff is also protected by Family and Medical Leave Act.

Plaintiff was a full time employee and missed a morning meeting due to insomnia the night before. She informed Ted Stevenson that she had insomnia and had to take a sleeping pill so that she could sleep prior to resuming work. Defendants allowed the accommodation but retaliated against her and used the information later to have her raped in her sleep at her home. Chelsea had no written disciplinary actions before her termination. The effect of the practices complained of herein has been to deprive Chelsea of equal employment opportunities and otherwise adversely affect her status as an employee because of her sex, race, religion, disability and FMLA needs.

At all material times, Defendants acted, directly or indirectly, in the interest of an employer with respect to Plaintiff. At all times, Defendants have been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d). At all times, Defendants have been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r). At all times, Defendants have been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated). At all times, Plaintiff was an individual employee engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207. Plaintiff has worked for Defendants from within the last

two years. Despite misclassifying Plaintiff as an independent contractor, Defendants controlled all aspects of Plaintiff's work. Specifically, Plaintiff was required to wear certain clothing and identify the company name on filings. In addition, Defendants assigned Plaintiff's jobs and her schedule. Plaintiff was required to adhere to the schedule Defendants assigned her. Defendants also dictated the manner in which Plaintiff performed her job duties as well as how much Plaintiff was to be paid for each job. Plaintiff was paid a fixed amount for each job regardless of the number of hours she worked. Plaintiff routinely worked over 40 hours per week. However, she was not paid overtime for doing so. Defendants knew that Plaintiff worked in excess of 40 hours per week and allowed and directed her to do so. Plaintiff is entitled to receive minimum wage, promised wages in accordance with and in excess of the standard pay scale and overtime pay for all hours worked in excess of 40 per work week.

Defendants assaulted, sexually assaulted, sexually abused, and abusively sexually contacted Chelsea Davis within the meaning of state and federal laws. For each incident, two or more Defendants conspired to accomplish the assault or abusive sexual contact against Chelsea Davis.

## IV. CLAIMS

*Liability*

In carrying out their single business enterprise, Defendants have common ownership and share financial and other resources. They have similar employees and operate out of the same office space and utilize the services of the same officers and employees. Each Defendant authorized all of the acts and omissions complained of herein attributed to Defendants. Defendants should be held jointly and severally liable for the causes of action complained of

**COMPLAINT**                                                                                    10

herein on the basis that they constitute a single business enterprise. Chelsea Davis reserves her right to use any single business enterprise argument as a shield, a sword or both for any purpose.

At times material to this action, Defendants acted within the scope of their employment. In addition, Defendants acted in furtherance of MS's business and as an agent of MS. Whenever in this complaint it is alleged that the Defendants did any act or thing, it is meant that the Defendants' supervisors, agents, servants, employees or representatives did such act and/or that at that time such act was done, it was done with the full authorization or ratification of Defendants or was done in the normal and routine course and scope of employment of Defendants' supervisors, agents, servants, employees, or representatives. MS and all entities associated with Defendants are vicariously liable for the actions of Defendants. Chelsea Davis reserves her right to use any vicarious liability argument as a shield, a sword or both for any purpose.

Defendants acted in their capacity as shareholders and managers and had actual authority from Defendants to engage in wrongful conduct alleged. Defendants intentionally conferred general authority on Defendants to act on its behalf. Through a lack of reasonable care, Defendants permitted Defendants to believe they possessed general authority to act on its behalf.  Each of Defendants had a meeting of the minds with Defendants as to the creation of the agency, and acted within the course and scope of the agency. The acts of management including but not limited to shareholder Samuel Baxter ("Baxter"), and shareholders Gordon White, Ted Stevenson, David Sochia and others were performed while in the employment of Defendants, to further Defendants' business(es), to accomplish the objective for which these

supervisory employees were hired, and within the course and scope of that employment or within the authority delegated to these employees. Managers/Financiers/Agents (one or more) were given supervisory authority over Plaintiff. As such, they controlled the day-to-day work conditions, duties, and all other aspects of Plaintiff's employment. Chelsea Davis reserves her right to use any actual authority/agency argument as a shield, a sword or both for any purpose, for either an argument for or against any party or non-party.

Defendants acted in their capacity as shareholders and managers and had apparent authority from Defendants and entities to which they belong to engage in the wrongful conduct alleged. Defendant(s) either (1) held Defendant(s) out as having the authority to act on its behalf; (2) knowingly permitted Defendant(s) to hold themselves out as having the authority to act on Defendant(s)' behalf; or (3) acted with such a lack of ordinary care that it clothed Defendant(s) with the indicia of authority to act on Defendant's behalf. Chelsea Davis reserves her right to use any apparent authority/agency argument as a shield, a sword or both for any purpose, for an argument for or against any party or non-party in any action.

### *Exhaustion of Administrative Remedies*

Plaintiff filed a Charge of Discrimination ("Charge") with the United States Equal Employment Opportunity Commission (hereinafter "EEOC") on January 8, 2014 against Defendants, charge no. 450-2014-00926. In that Charge, and any amendments and/or attachments thereto, Plaintiff asserts that Defendant discriminated against her because of her race, gender, age and disability. Plaintiff exhausts her administrative remedies and files this suit within the statutory limitations period.

### *Claims for Sexual Discrimination Under Title VII, 42 U.S.C. §1981, and Other State and Federal Law*

**<u>COMPLAINT</u>**                                                                                                            12

1.      Title VII makes it illegal for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin [ ] or to limit, segregate, or classify its employees [ ] in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect [her] status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. 2000e-2(a) (2010). Chelsea Davis is the victim of quid pro quo and hostile work environment sexual harassment and discrimination and sexual abuse under state and federal law.

2.      Defendants, through its agents, supervisors, or employees violated Chelsea's civil rights in violation of 42 U.S.C. §1981 and Title VII, by discharging her, otherwise discriminating against her with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin, limiting, segregating, or classifying its employees in any way which would deprive or tend to deprive her of employment opportunities, and otherwise adversely affecting her status as an employee, because of her race, color, religion, sex, or national origin. These violations consisted of discrimination of a continuous nature. Defendants, through its agents, supervisors, or employees, discriminated against Plaintiff which led to the loss and impairment in whole or part, of the wages, benefits, privileges, and terms and conditions of Plaintiff's employment. The above-described acts on Defendants part caused Plaintiff substantial injury and damage.

*Claims for Conspiracy*

3.      As a result of Chelsea's complaints of sexual harassment and discrimination,

Defendants and others engaged in a conspiracy and campaign to stigmatize, vilify, and defame Chelsea, ruining her reputation and making it impossible for her to secure other employment. Plaintiff hereby moves to disqualify attorneys Angeline Bain, Don Colleluori and Erin Dwyer because they are witnesses to overt actions to harass and threaten Chelsea in retaliation to the filing of complaints. Defendants in a combination participated in a single course of action to accomplish a single unlawful purpose or a lawful purpose by unlawful means. Defendants in the combination had a meeting of the minds on the object or course of action, and in furtherance of the object or course of action, committed one or more unlawful, overt acts, causing damages to Plaintiff as the proximate result.

4.      Two or more Defendants engaged in a conspiracy to accomplish the assault, sexual assault, or abusive sexual contact of Chelsea Davis. A single conspiracy existed to accomplish each assault. Plaintiff claims several independent conspiracies to accomplish single torts, each individually. Liability for conspiracy depends on participation in some underlying tort for which Plaintiff seeks to hold at least one of the named Defendants liable. When a Defendant gives assistance or encouragement to a person committing a tort, and the assistance or encouragement is a substantial factor in causing the tort, the Defendant is considered a tortfeasor and is responsible for the consequences of the tort. Each of the Defendants may be held liable individually or vicariously liable. Plaintiff seeks recovery of all actual, consequential and incidental damages from Defendants, who should be held jointly and severally liable for the underlying acts. Plaintiff will show unto the Court that each Defendant acted with the requisite intent - i.e., with fraud, malice, or gross negligence for purposes of an exemplary damage award. Defendants and other entities or associations in which Defendants are members

may be held vicariously liable for the actions of one or more Defendants upon proof of a joint enterprise. As a direct and proximate result of Defendant's conduct, Plaintiff suffered general damages in an amount to be ascertained according to proof at trial, within the jurisdictional limits of this Honorable Court. Plaintiff seeks punitive and exemplary damages as described herein.

*Claims for Medical Leave Under State and Federal Law*

5.      Plaintiff was qualified for, requested, and received leave pursuant to the state and federal Family and Medical Leave Acts ("FMLA") from Defendant MS. Defendant violated Plaintiff's rights under the FMLA by interfering with, discouraging, and/or restraining the exercise of or the attempt to exercise her rights under the FMLA and by retaliating against Chelsea following a medical leave of absence under the FMLA including but not limited to: being openly hostile towards Chelsea after her return to work from her leaves, deviating from normal medical leave reporting processes, snatching documents out of his hands, and terminating him soon after she returned from her medical leaves. Plaintiff seeks all rights and remedies available to her including but not limited to reinstatement, actual and compensatory damages, and exemplary damages.

*Claims for Disability Discrimination Under State and Federal Law*

6.      Plaintiff is a qualified individual with a permanent, long-standing physical impairment in that she suffers from severe insomnia and PTSD that limits her in one or more major life activities including but not limited to his ability to think, concentrate, and work, among other things. Plaintiff has a history and record of having said disability that severely compromised Plaintiff in the ways cited above. Her record of said disability takes the form of

**COMPLAINT**                                                                 15

hospital records, medical records and personnel records that indicates the plaintiff once had a substantially limiting impairment. Here, Plaintiff was in and out of doctor's care surrounding the insomnia and PTSD that she endured. As well, Plaintiff was placed on medical leave for such medical condition by Defendant employer, for which her supervisors were aware. Plaintiff has been regarded as having a disability. Consequently, she is disabled within the meaning of the ADA. Defendants employer entertained some misperceptions regarding Plaintiff that proved detrimental to her employment − namely that her impairment was problematic, permanent, and substantially limiting. Defendants, through their agents, supervisors, or employees violated Plaintiff's civil rights in violation of the ADA, by intentionally interfering with Plaintiff's performance of her employment because of her actual medical condition, history and record of disability and the perception of same including being openly hostile toward Chelsea after her return to work from her medical leaves, deviating from normal medical leave reporting processes, snatching documents out of her hands, and terminating her soon after she returned from her medical leaves, among other things. Defendants, through its agents, supervisors, or employees discriminated against Plaintiff which led to the loss and impairment in whole or part, of the wages, benefits, privileges, and terms and conditions of Plaintiff's employment. The above-described acts on Defendants' part caused Plaintiff substantial injury and damage.

***Claims for Racial Discrimination Under State and Federal Law***

7.      Defendants, through its agents, supervisors, or employees violated Chelsea's civil rights in violation of 42 U.S.C. §1981 and Title VII, by intentionally interfering with Chelsea's performance of her employment because of her race. This intentional interference

consisted of discrimination of a continuous nature. Defendants, through its agents, supervisors, or employees discriminated against Plaintiff which led to the loss and impairment in whole or part, of the wages, benefits, privileges, and terms and conditions of Chelsea's employment. The above-described acts on Defendants part caused Plaintiff substantial injury and damage.

***Claims for Wages and Overtime Under State and Federal Law***

8.     Defendants were aware of the Texas and FLSA's overtime requirements and chose not to pay Plaintiff minimum wage, promised wages in accordance with and in excess of the standard pay scale and overtime pay for all hours worked in excess of 40 per work week minimum wage, promised wages in accordance with and in excess of the standard pay scale and overtime pay for all hours worked in excess of 40 per work week. Defendants willfully misclassified Plaintiff as an independent contractor and refused to pay her overtime. Defendants knowingly, willfully, or with reckless disregard carried out their illegal pattern or practice of failing to pay overtime compensation with respect to Plaintiff. Defendants knowingly, willfully, or with reckless disregard carried out their illegal pattern or practice of failing to pay wages and overtime compensation with respect to Plaintiff. Because Defendants' records are inaccurate and/or inadequate, Plaintiff can meet her burden under the Texas law and FLSA by proving that she, in fact, performed work for which she was improperly compensated, and produce sufficient evidence to show the amount and extent of the work as a matter of a just and reasonable inference. Defendants' practice of failing to pay Plaintiff the federally mandated minimum wage violated Texas law and the FLSA. None of the exemptions provided by Texas law and the FLSA regulating the duty of employers to pay minimum wage are applicable to the Defendants or to the Plaintiff. For example, Chelsea participated in a call

and spent time working on the matter *i4i v. Microsoft Inc.* for client i4i in May 2011, and still has not received payment for her services. Even when she went to California and met with Loudon Owen of i4i, she did not receive any compensation from Defendants.

**Claims for False Imprisonment**

9. Defendants caused the willful detention of Plaintiff without consent and without authority of law, which caused harm to Chelsea. As a direct and proximate result, Chelsea has been damaged.

**Claims for Quantum Meruit and Unjust Enrichment Under State and Federal Law**

10. Plaintiff seeks compensation, on grounds of quantum meruit and unjust enrichment, for the innovative systems that she invented, created and developed and for all of her labor and services. Plaintiff alleges that, as consideration for this work, Defendants promised her compensation beyond that which she received for her services. As a direct and proximate result, Defendants were unjustly enriched, depriving Chelsea of compensation, for which Chelsea seeks to recover damages.

**Claims for Assault and Battery and Conspiracy to Commit the Same Under State and Federal Law**

11. One or more Defendants (1) intentionally, knowingly, or recklessly caused bodily injury to Plaintiff; (2) intentionally or knowingly threatened Plaintiff with imminent bodily injury; (3) intentionally drugged Plaintiff without her knowledge; (4) intentionally improperly visually recorded Plaintiff; (5) intentionally contacted Chelsea Davis with a sexually transmitted disease without her knowledge; (6) intentionally, knowingly, or recklessly conspired to cause bodily injury to Plaintiff; (7) intentionally or knowingly conspired to threaten Plaintiff with imminent bodily injury; (8) intentionally conspired to drug Plaintiff without her

**COMPLAINT**                                                                                          18

knowledge; (9) intentionally conspired to improperly visually record Plaintiff; (10) intentionally conspired to contact Chelsea Davis with a sexually transmitted disease without her knowledge. Baxter caused a "sexual contact" between himself and Chelsea Davis when he caused the "intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." Each assault directly and proximately caused harm to Chelsea Davis. As a direct and proximate result of one or more Defendants' conduct, Plaintiff suffered damages in an amount to be ascertained according to proof at trial, within the jurisdictional limits of this Honorable Court. Plaintiff seeks punitive and exemplary damages.

### Claims for Wrongful Termination and Breach of Contract

12.     Chelsea Davis was wrongfully terminated from her employment. During the course of her employment, Chelsea was promised that her employment would continue as long as her job performance was satisfactory. Chelsea and Defendants had an agreement that was clearly specified and therefore binding on both parties. When Chelsea was terminated due to no fault of her own, Defendants breached said agreement. Defendants' wrongful conduct directly and proximately caused Chelsea to incur damages.

### Claims for Intentional Infliction of Emotional Distress

13.     Defendants acted intentionally or recklessly toward Chelsea. Each of Defendants' actions were intended to harm Chelsea. Such actions were in the form of abuse consisting of derogatory or defamatory statements made to or about Chelsea by shareholders of MS and others. Each of Defendants' conduct was both extreme and outrageous. Such conduct caused Chelsea extreme emotional distress.

**COMPLAINT**                                                                                   19

*Claims for Fraud and Promissory Estoppel*

14.     Chelsea was promised that she would not be terminated as long as her performance was satisfactory. Chelsea's performance was at least satisfactory, but she was terminated. Defendant's conduct was fraudulent in that Defendant made a false, material representation to Chelsea that was either known to be false when made or was made without knowledge of its truth, that was intended to be acted upon, that was relied upon, and that caused injury to Chelsea.

*Claims for Negligent Hiring, Supervision and Retention and Gross Negligence*

15.     Defendants owed a duty to Chelsea that Defendants supervise Defendants' supervisors, managers and others, including Defendants' employees, agents, financiers and customers, and ensure that such employees and agents did not injure other employees. Defendants failed to uphold its duty in exercising reasonable care to supervise Chelsea's supervisors, managers and others so that they did not cause injury to Chelsea. Instead, Defendants allowed such supervisors, managers and others to tease, torment, degrade, sexually harass and sexually abuse Chelsea during her employment. Such negligence caused Chelsea to incur substantial injuries.

*Claims for Wage Discrimination*

16.     Defendants willfully discriminated against Plaintiff by paying her less than males in her position and denying her wages and promotions on the basis of her sex in violation of the Equal Pay Act and state law. Defendants' willful wage discrimination caused Chelsea to suffer damages as a direct and proximate result.

*Claims for Hate Crimes*

**COMPLAINT**                                                                                    20

17.     Under 18 USC § 249, whoever, whether or not acting under color of law, in any circumstance described in subparagraph (B) or paragraph (3), willfully causes bodily injury to any person or, through the use of fire, a firearm, a dangerous weapon, or an explosive or incendiary device, attempts to cause bodily injury to any person, because of the actual or perceived religion, national origin, gender, sexual orientation, gender identity, or disability of any person—the conduct described in subparagraph (A) occurs during the course of, or as the result of, the travel of the defendant or the victim—(I) across a State line or national border; or (II) using a channel, facility, or instrumentality of interstate or foreign commerce has committed a violation of 18 USC § 249. Defendants conspired to commit a violation of 18 USC § 249 against the victim Chelsea Davis and caused injury to Chelsea Davis. As a proximate result of such violation, Chelsea Davis has been damaged.

### Claims for Federal Civil Remedy for Personal Injuries

18.     Under 18 U.S.C. § 2255, "[a]ny person who, while a minor, was a victim of a violation of section 1589, 1590, 1591, 2241 (c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, or 2423 of this title and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains and the cost of the suit, including a reasonable attorney's fee. Any person as described in the preceding sentence shall be deemed to have sustained damages of no less than $150,000 in value." Chelsea Davis is such a person and has suffered personal injuries as a result of such violation. Defendants conspired to commit a violation of 18 U.S.C. § 2255 against the victim Chelsea Davis and caused personal injury to Chelsea Davis. As a result of such violation,

Chelsea Davis suffered damages of no less than $150,000. Under 18 U.S.C. § 2248, Chelsea seeks an order of restitution for the full amount of her losses, which "includes any costs incurred by the victim for—(A) medical services relating to physical, psychiatric, or psychological care; (B) physical and occupational therapy or rehabilitation; (C) necessary transportation, temporary housing, and child care expenses; (D) lost income; (E) attorneys' fees, plus any costs incurred in obtaining a civil protection order; and (F) any other losses suffered by the victim as a proximate result of the offense." *Id.* As a proximate result, Chelsea Davis has been damaged.

***Claims for Conspiracy to Interfere with Chelsea Davis's Rights Conferred on her by Section 1981, the Equal Protection Clause of the 14th Amendment; Civil Action for Deprivation of Rights Under 42 U.S.C. §1983***

19.     Defendants include two or more persons who conspired to injure, oppress, threaten, or intimidate Chelsea Davis in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to her by the Constitution or laws of the United States, or because of her having so exercised the same. Defendants intentionally discriminated against Chelsea on the basis of her age, sex, disability, race and religion and interfered with her contractual rights in violation of 42 U.S.C. §1981. As a proximate result, Chelsea Davis has been damaged.

20.     Under 42 U.S.C. §1983, Chelsea brings a civil action for deprivation of rights. She asserts that the actions of Samuel Baxter and others violated her substantive due process rights in that she has been deprived of a liberty interest in violation of the law. Defendants made false allegations against her alleging that she was fired for cause that seriously damaged her standing and association in the community. She was terminated for reasons that are (1)

false, (2) publicized, and (3) stigmatizing to her standing or reputation in the community. In the alternative, she was terminated for no reason at all in spite of a promise not to terminate her for no reason or reasons that were false and had such a stigmatizing effect that she has been denied other employment opportunities as a result. As a proximate result, Chelsea Davis has been damaged.

21.     Defendants conspired to interfere with Chelsea's employment with other employers in violation of 42 U.S.C § 1981 – her right to make and enforce contracts. Defendants further conspired to deprive her of equal protection under the law and her substantive due process rights under the 14th Amendment in that they sought to categorically malign, bring into dispute and libel her to the public and have her raped in violation of 42 U.S.C. § 1983. A § 1983 conspiracy claim may arise when a private actor conspires with state actors to deprive a person of their constitutional rights under color of state law. As a proximate result, Chelsea Davis has been damaged.

22.     Under Tex. Civ. Prac & Remedies Code Sec. 106.001, Defendants knowingly, as an officer or employee of the state or of a political subdivision of the state who is acting or purporting to act in an official capacity, because of a person's race, religion, color, sex, or national origin, discriminated against Chelsea Davis. Defendants refused to grant a benefit to her. Defendants imposed an unreasonable burden on her. Defendants refuse to award a contract to her. As a proximate result, Chelsea Davis has been damaged.

***Claims for Sexual Assault, Aggravated Sexual Assault, Federal Assault and Sexual Abuse***

23.     Defendants intentionally or knowingly caused the penetration of the sexual organ of Plaintiff, without Plaintiff's consent; and caused the penetration of the mouth of Plaintiff by

the sexual organ of Defendant, without Plaintiff's consent. Plaintiff could not have consented because Defendant compelled Plaintiff to submit or participate by the use of physical force or violence; Plaintiff had not consented and Defendant knew Plaintiff was physically unable to resist; and/or as a public servant, Defendant coerced Plaintiff to submit or participate.

24.    Samuel Baxter's threat caused Chelsea to believe, for example, that Carlos Cortez is HIV positive and that she would be raped with a deadly weapon. Sexual assault constitutes aggravated sexual assault if the person causes serious bodily injury or attempts to cause the death of the victim or another person in the course of the same criminal episode or if the person, by acts or words, places the victim in fear that any person will become the victim of an offense under Section 20A.02(a)(3) or 20A.02(a)(4), or that death, serious bodily injury, or kidnapping will be imminently inflicted on any person.

25.    Defendants knowingly engaged in or caused sexual contact with or by another person in violation of 18 U.S.C. 2244(a).

26.    Defendants knowingly engaged in sexual contact with another person without that other person's permission in violation of 18 U.S.C. 2244(b).

27.    Defendants knowingly—(1) caused another person to engage in a sexual act by threatening or placing that other person in fear (other than by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping) or attempted to do so in violation of 18 U.S.C. 2242.

28.    Defendants knowingly (2) engaged in a sexual act with another person if that other person is—(A) incapable of appraising the nature of the conduct; or (B) physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual

**COMPLAINT**                                                                                   24

act, or attempted to do so in violation of 18 U.S.C. 2242.

29.     Defendants knowingly caused another person to engage in a sexual act—(1) by using force against that other person; or (2) by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping; or attempted to do so in violation of 18 U.S.C. 2241.

30.     Defendants knowingly (1) rendered another person unconscious and thereby engaged in a sexual act with that other person; or (2) administered to another person by force or threat of force, or without the knowledge or permission of that person, a drug, intoxicant, or other similar substance and thereby—(A) substantially impaired the ability of that other person to appraise or control conduct; and (B) engaged in a sexual act with that other person; or attempted to do so in violation of 18 U.S.C. 2241.

### Claims for Violation of 18 U.S.C. 247

31.     Under 18 U.S.C. 247, Defendants intentionally obstructed, by force or threat of force, Chelsea Davis in the enjoyment of her free exercise of religious beliefs, or attempts to do so. As a proximate result, Chelsea Davis has been damaged.

### Claims for Violation of 18 U.S.C. § 1592

32.     Defendants knowingly destroyed, concealed, removed, confiscated, or possessed an actual or purported passport or other immigration document, or any other actual or purported government identification document, of Chelsea Davis  in the course of a violation of section 1581, 1583, 1584, 1589, 1590, 1591, or 1594(a) and with intent to violate section 1581, 1583, 1584, 1589, 1590, or 1591.

## V. DAMAGES FOR PLAINTIFF CHELSEA DAVIS

Defendants' conduct constitutes violations of statutory law. Such unlawful conduct seriously affects Chelsea in her occupation, trade and business. Because of Defendants' unlawful conduct, Chelsea has suffered, suffers, and will continue to suffer humiliation, mental anxiety and stress, and other damages. Chelsea has suffered direct injury as a proximate result of the unlawful discriminatory practices, policies and procedures of Defendants. Accordingly, Chelsea seeks all general, special, incidental, consequential, economic, compensatory, and punitive damages in an amount to be proved at trial.

Because of Defendants' unlawful and tortious conduct, Chelsea has incurred out-of-pocket expenses, which include litigation costs and other expenses to preserve her ability to earn a living.

As a direct and proximate result of one or more of Defendant's conduct, Plaintiff suffered general damages in an amount to be ascertained according to proof at trial, within the jurisdictional limits of this Honorable Court. Chelsea suffered:

 a. loss of earnings in the past;

 b. loss of earnings in the future; and

 c. loss of employee entitled benefits.

For purposes of an award of prejudgment interest and/or damages, Plaintiff seeks all monetary damages, forfeiture and disgorgement to prevent unjust enrichment of Defendants.

For purposes of an award of exemplary damages based on malice, the wrongful acts of one or more Defendants were done maliciously, oppressively, and with the intent to harm Plaintiff. Plaintiff is therefore entitled to exemplary damages appropriate to punish and set an example of one or more Defendants.

**<u>COMPLAINT</u>**               26

For purposes of an award of exemplary damages based on gross negligence, a person can reasonably anticipate that one or more acts or omissions complained of herein involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others that is substantially certain to result from, for example, wage discrimination and sexual abuse; and the defendant had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others. Plaintiff is therefore entitled to exemplary damages appropriate to punish and set an example of Defendant.

## VI. DEMAND FOR A JURY TRIAL

Plaintiff demands a jury trial on all issues not decided on summary judgment that are triable by a jury.

## VII. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that default or summary judgment, upon motion, be entered for Plaintiff against one or more Defendants for liability for Plaintiff's cause; and upon final hearing(s) of the cause(s), judgment be entered for Plaintiff against Defendant(s) for:

   a. Permanent injunction enjoining Defendants, its agents, successors, employees, and those acting in consort with Defendants from engaging in any employment practice which discriminates on the basis of FMLA needs, disability, sex and race discrimination;

   b. All damages to which Plaintiff may be entitled pursuant to this Complaint, or any amendment(s) thereto, including but not limited to

**COMPLAINT**                                                                 27

back pay, front pay in lieu of reinstatement, loss of earnings in the past, loss of earning capacity in the future, loss of benefits in the past, loss of benefits in the future, statutory relief at law, and equity;

c.   Damages in an amount within the jurisdictional limits of this Court,

d.   Compensatory damages for pain and mental suffering in the past and future, job search related expenses, lost wages, lost benefits, mental anguish, humiliation, embarrassment, loss of enjoyment of life;

e.   Front pay in an amount to be determined by the jury but for no less than two years from the date of judgment, reduced only by the amount of wages she has earned or with reasonable diligence might earn;

f.   Punitive damages in an amount above the minimum jurisdictional limit of the Court;

g.   prejudgment interest to compensate her for the lost use of the money in a damages award during the time lapse between the accrual of Plaintiff's claim and the date of the judgment at the maximum rate allowable by law,

h.   postjudgment interest to compensate her for the lost use of the money in a damages award that accrues from the date the judgment is signed until the date the judgment is satisfied at the legal rate,

i.   court costs, including clerk fees and service fees, court reporter fees, and other costs permitted by law, and

j.   such other and further relief, at law or in equity, to which Plaintiff may

**COMPLAINT**                                                                                                    28

be entitled.

Dated:  January 8, 2014                    Respectfully submitted,


                                           /s/Chelsea L. Davis
                                           Chelsea L. Davis, Pro-Se
                                           2068 Meadow View Rd.
                                           Princeton, TX 75407
                                           Telephone: (469) 426-5850
                                           Facsimile: (972) 803-3576
                                           cdavis@chelseadavispc.com

**COMPLAINT**                                                      29